## Singerly *versus* Thayer.

1. A. being engaged in erecting a high building, B. proposed in writing to him to put in a patent passenger elevator, of novel construction, " warranted satisfactory in every respect," and A. accepted the offer. When the elevator was substantially erected, but before final completion and adjustment, and before it was tendered by B. as completed, A. requested permission to use it in the work of completion of the building. After such use for about two months, A. alleged that it was not satisfactory to him, and after notice to B. to take it out at once, A. dismantled the elevator and machinery connected therewith, and stored the same. In an action by B. against A., in which the narr. averred that A. prevented the completion of the work, the court below charged the jury that if they were of opinion, under the evidence that the elevator was reasonably fit for the purpose for which it was intended, and that the defendant ought to have been satisfied with it, the verdict might be for the plaintiff. The jury found for the plaintiff. *Held*,

(1.) To be error. The proposal being made to A., the fair inference was that the elevator was to be satisfactory *to him*, and while it could not be rejected for mere caprice, yet a bona fide objection by him to its working was a sufficient defence to the action.

(2.) If the elevator was not sufficiently completed to enable the defendant reasonably to determine whether it was or would be satisfactory to him, then his rejection of it was premature, and would not be a defence; but if substantially completed so that he could understand how it would operate, he was not bound to wait an unreasonable time for the entire completion of some minor matters.

January 9th, 1885. Before MERCUR, C.J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county :*

Assumpsit, by Eli Thayer against William M. Singerly. The narr. averred that the said parties had entered into an agreement whereby plaintiff was to put a hydraulic elevator of a certain kind into a building then being erected by the defendant, for the sum of $2300; that plaintiff had in great part performed his part of the agreement, and "hath always been ready and willing to perform and complete the whole of said work in pursuance of the said agreement" yet the defendant "did not nor would permit or suffer the said plaintiff to proceed to complete the said work, and then and there wholly hindered and prevented him from so doing, and did wholly neglect and refuse to comply with his said agreement, and then and there wrongfully discharged and prevented the said plaintiff from any further preformance or completion of his said agreement, promise, and undertaking, to the damage of the said plaintiff" etc.

Pleas, non assumpsit, payment with leave, etc., and set-off.

[Singerly *v.* Thayer.]

On the trial, before THAYER, P. J., the following facts appeared:—

The defendant having in course of erection a large and high building on Chestnut Street, Philadelphia, known as the "Record Building," and desiring to put in a passenger elevator, the plaintiff made the following proposition which was accepted by the defendant:—

15th and Market, Phila., Pa., 8, 16, 1881.

WM. M. SINGERLY, Esq.:

I propose to put my patent hydraulic hoist in your new building on Chestnut Street (including a duplex pump worth $800), according to verbal specifications given by your architect for $2,300, *warranted satisfactory in every respect.*

Yours, ELI THAYER.

The plaintiff proceeded to build and put in place the elevator, pump, guides, etc., and when the same was substantially erected, though not completed nor adjusted, defendant requested plaintiff to permit the machine to be used for the purpose of hoisting workmen and material, etc., in the finishing of the top stories of the building. This permission was granted, and for about two months the elevator was so used by defendant's employés. It was not, however, tendered by plaintiff to defendant as a completed passenger elevator, under the contract, and the price was not demanded. While so used it ran irregularly, "it went from side to side, jarred some, would stick in the cut-off rings." One witness, who ran the elevator, in defendant's employ, for about a month, testified: "I would take the elevator from the first to the sixth floor; it would almost drop from the sixth to the third floor, and then it would almost stop, and then go slowly down," etc.

Plaintiff testified that the defects in the running were caused by reason of its unfinished condition, the arms and guides were to be made plumb, some of the cut-off rings required to be taken out and filed, and it required adjustment.

Plaintiff and his agent and foreman testified that there was no structural defect, and that it could have been made perfect, if they had had an opportunity to finish it; "Montjoy (the boss) was to send word when they were ready to have it finished." Plaintiff testified "I saw Mr. Singerly once; I was going in to see whether they were through with it, and when we could finish it; he said "Are you the elevator man? I won't have it; there are no safety ropes and it don't run smooth. I was amazed; he then moved away and I had no opportunity to say anything . . . . . I was never notified to finish it; never was finished; these defects are always in every elevator; they have to be finished first; I was ready any day to com-

[Singerly v. Thayer.]

plete the work; there was no defect which would have prevented its being perfect; whether it would have been satisfactory or not, I don't know." Other testimony is quoted in the opinion of this court.

In April, 1882, the plaintiff received this letter:—

Office of Willis G. Hale, Architect, 518 Walnut Street.
PHILADELPHIA, April 18th, 1882.

*Dear Sir:*—Mr. Singerly has made positive decision that he will not have your elevator in his building. He offers you $500 to take your work out *at once*, and you will please attend to the matter. Yours, etc.,    WILLIS G. HALE.

About the time of the receipt of this letter by plaintiff, the defendant's employees began to dismantle the pump, and very soon afterwards they took out the entire elevator, and stored the parts. Subsequently plaintiff brought this suit.

The court charged the jury as follows:—

" The meaning of the contract contained in the written proposal and letter of August 16th, 1881, signed by the plaintiff, is not that the defendant shall be satisfied with the machine, but that it shall be of such a character that he ought to be satisfied with it; that the work shall be done in a workmanlike manner, and that the elevator when completed shall be reasonably fit for the purpose for which it was intended, and shall accomplish the purpose for which it was intended with a reasonable degree of perfection. Then it should satisfactorily perform the work of such an elevator as the defendant ordered. It does not resemble at all the case of a sale of goods on approval. If you buy an article at a store upon approval and it is sent to you, if upon further examination you do not approve it you may return it and will not be bound to pay for it. This contract does not resemble such a purchase. The building of such an elevator in the defendant's building was a work involving a large outlay of money and the consumption of much time in the construction. The pump which he furnished for it cost him alone $850. It is not to be supposed that the plaintiff would incur the great expense necessarily attending upon the erection of such a machine, and that the defendant should then be permitted to reject it at his own caprice and not pay for it. The contract does not say that it shall be satisfactory to him, but that it is " warranted satisfactory in every respect;" that is, that it shall perform its functions in a satisfactory manner, but it was not intended that the defendant should be the exclusive judge of that. When such a machine is ordered to be constructed there is always an implied contract that the work shall be done in a workmanlike manner, and that the machine shall be reasonably fit for the purpose for which it is

intended to be used; that it shall accomplish the object for which it is erected in a satisfactory manner. Such an implied warranty would have existed in this case if nothing had been said about it in the contract, and the contract expresses no more than would have been implied under such circumstances.

" The objection made to the elevator by the defendant seems to have been that it did not run smoothly, that it vibrated in the guides and moved unsteadily. On the other hand the plaintiff testified that these defects, if they existed, could have been remedied very speedily, and at slight cost, if he had been allowed an opportunity to do it; that at the time the defendant rejected the elevator it had not been completely finished and adjusted. If this is so, if you believe that when the defendant repudiated the machine it had not been finished or adjusted, and that such defects as existed might have been remedied by the plaintiff, if he had been allowed to complete it, and if he was not allowed to complete it by the defendant, then you ought to find a verdict for the plaintiff. .

" A great deal of testimony has been put in about the elevator; you will decide whether it was built in a workmanlike manner and performed the purpose for which it was intended in a manner which ought to have been satisfactory to the defendant; or if there were defects, whether they could and would have been remedied by the plaintiff if he had been permitted to do so. If so, the verdict should be for the plaintiff. If, on the contrary, the machine did not answer in a satisfactory manner the purposes for which it was intended, or if such defects as existed could not have been remedied by the plaintiff, or if the plaintiff was not deprived of the opportunity to remedy them and failed to do so, and if the defects were of a character to render the elevator unsatisfactory and unfit to perform the purpose for which it was erected, in a satisfactory manner and with a reasonable degree of perfection, then your verdict should be for the defendant."

Verdict and judgment for the plaintiff for $2,300. The defendant took this writ of error assigning for error the charge of the court as above. .

*J. Howard Gendell*, for the plaintiff in error.—The elevator was "warranted satisfactory in every respect." Satisfactory to whom? Not to the builder, nor to a jury, but to the owner of the building who was to use it. We admit that a decision that it is unsatisfactory must be made in good faith, and not be arbitrary or from caprice. That the stipulation, in this view, is not unreasonable is well illustrated in this case. For the plaintiff admitted that it was not satisfactory, the most he would swear was he thought it might be made so, but

"whether it would have been satisfactory or not, I don't know." Numerous authorities support our position that the true construction of the contract is that the warranty was to the fair satisfaction of the defendant and no one else: Hartman v. Blackburn, 7 Pitts. Leg. Jour., 140; McCarren v. McNulty, 73 Mass., 139; Brown v. Foster, 113 Mass., 136; Gray v. R. R. Co., 11 Hun, 70; Hoffman v. Gallaher, 6 Daly, 42; Gibson v. Cranage, 39 Mich., 49; Barlow v. Thompson, 46 Ind., 384; Andrews v. Belfield, 2 C. B., N. S., 779; Nelson v. Von Bonnhorst, 5 Cas., 352; Cass v. R. R. Co., 30 Sm., 31; Zaleski v. Clark, 44 Conn., 218. In the last cited case, the contract was for a plaster bust of the deceased husband of the defendant, and the court held: "It is not enough to say that she *ought* to be satisfied with it, and that her dissatisfaction is unreasonable. She, not the court, is entitled to judge of that. The contract was not to make one that she *ought* to be satisfied with, but one that she *would* be satisfied with," pp. 223, 224.

We submit that the court below erred in holding that the "contract expresses no more than would have been implied under such circumstances," and that "it was not intended that the defendant should be the exclusive judge" whether the elevator was satisfactory.

There was evidence that when defendant's agent complained to the plaintiff that it was not satisfactory, the plaintiff referred him to two other elevators that were in operation for other parties, which upon examination proved to be defective and unsatisfactory. This was saying, substantially, "I will make yours just like those," in other words, equally defective. Under these circumstances the defendant was justified in rejecting the elevator at once.

*Angelo T. Freedley*, for the defendant in error.—The elevator was never completed, nor was it tendered to defendant as completed, the reason being that defendant in the first place requested permission to use it in its uncompleted condition for hoisting materials and workmen in the finishing of the building, and, in the second place, prevented the plaintiff from completing it. Prevention excuses performance, and a defendant preventing performance cannot rely upon a special contract or upon conditions precedent therein contained: Note to Cutter v. Powell, 2 Sm. L. Cas., 62; 1 Wharton on Contracts, § 605; 2 Chitty on Contracts, 1087 (Am. Ed.); Frost v. Knight, 7 Law Rep. Ex., 111; Hochster v. De LaTour, 2 Ellis & Black., 690; Société Générale v. Milders, 49 Law Tim. Rep. N. S., 55; Pontifex v. Wilkinson, 1 C. B., 75; Planché v. Colburn, 8 Bingham, 14; Moulton v. Trask, 9 Metcalf, 577. In Peck v. U. S., 102 U. S., 64, the court said: "It is a sound

principle . that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned ": Mountjoy *v.* Metzger, 9 Phila. Rep., 10 ; Grove *v.* Donaldson, 3 Harris, 135; Stewart *v.* Walker, 2 Id., 293 ; Hall *v.* Rupley, 10 Barr, 231.

The gist of the action, as declared on in the narr., was for wrongfully preventing the completion of the elevator, and for wrongfully destroying the plaintiff's work without notice, and confiscating his materials, which defendant still retains, without payment. The argument of plaintiff in error does not touch this branch of the case.

But even if opportunity to complete the elevator had been afforded, the expression in the contract " warranted satisfactory in every respect," did not authorize the defendant's acts. The defendant was not constituted sole and exclusive judge of performance, without regard to whether his decision was reasonable or not. The warranty was simply that the elevator should be a satisfactory elevator. The case differs widely from a sale of goods on trial, for if the trial is unsatisfactory then the goods can be returned uninjured. Nor is the case similar to a warranty that it should be approved by the defendant or some other named person, as in the cases cited by plaintiff in error. The case of Hartman *v.* Blackburn, 7 Pitts. Leg. Jour., 140, strongly relied on by plaintiff in error, was an action for the price of a set of teeth, and seems to be a mere clipping or syllabus. In any aspect of the case there was no error in the instructions of the court below.

Chief Justice MERCUR delivered the opinion of the court; October 5th, 1885.

This contention arises on a contract contained in the following written proposal, to wit :

15th and Market, Phila. Pa., 8, 16, 1881.
WM. M. SINGERLY, Esq. :

I propose to put my patent hydraulic hoist in your new building on Chestnut street, (including a duplex pump worth $800), according to verbal specifications given by your architect, for $2,300, warranted satisfactory in every respect.

Yours,          ELI THAYER.

Plaintiff in error accepted this proposition. The elevator was substantially finished. It proved to be unsatisfactory. He therefore declined to accept it, and gave notice that he desired it to be removed. This Thayer refused to do. Thereupon Singerly took it down and holds it subject to the order of Thayer. The latter brought this suit claiming the contract price.

The controlling question is what meaning and effect are

to be given to the words "*warranted satisfactory in every respect?*"

Satisfactory to whom? Certainly not to the maker only. Was it to be satisfactory to the person for whom it was to be made and by whom it was to be used? The learned judge thought this was not a necessary requirement; but if it was built in a workmanlike manner and performed its intended purpose in a manner which ought to be satisfactory to the plaintiff in error, that was sufficient. In other words it may have been wholly unsatisfactory to him, yet if the jury thought he ought to have been satisfied, he was bound to accept it. In effect that is, it need not have operated to his satisfaction in any respect: but to the satisfaction of the jury which might be called to pass on the rights of the parties.

The proposition was made to induce him to purchase a kind of elevator not in general use. The fair inference is that he desired to procure one that would be satisfactory to himself. The manifest import and meaning of the language used is that it should be satisfactory to him. This then was the agreement. To him alone was the proposition made. It would not have been any clearer had it read warranted satisfactory to you in every respect. He therefore was the person to decide and to declare whether it was satisfactory. He did not agree to accept what might be satisfactory to others but what was satisfactory to himself. This was a fact which the contract gave him the right to decide. He was the person negotiating for its purchase. He was the person who was to test it, and to use it. No other persons could intelligently determine whether in every respect he was satisfied therewith.

McCarren *v.* McNulty and others, 7 Gray, 139, was on an agreement to make a book-case "in a good, strong and workmanlike manner, to the satisfaction of the president of the society" for which it was to be made. It was held not to be sufficient to prove that it was constructed according to the terms of the agreement without also proving it was satisfactory to or accepted by the defendant.

When the agreement is to make and furnish an article to the satisfaction of the person for whom it is to be made, numerous authorities declare it is not a compliance with the contract to prove he ought to have been satisfied. It was so held in Gray *v.* The R. R., 11 Hun, 70, where the contract was for the purchase of a steamboat: In Brown *v.* Foster, 113 Mass., 136, when the agreement was to make a suit of clothes: In Zaleski *v.* Clark, 44 Conn., 218, on a contract for a plaster bust of the deceased husband of the defendant: In Gibbson *v.* Cranage, 39 Mich., 49 where a portrait was to be satisfactory to the defendant, and in Hoffman *v.* Gallaher, 6 Daly, 42, where

a portrait of defendant was to be satisfactory to his friends. So where a person got a set of teeth from a dentist under an agreement that they were to be satisfactory, it was held, in Hartman *v.* Blackburn, 7 Pittsburgh Leg. Jour., 140, that he was made the exclusive judge of their value.

To justify a refusal to accept the elevator on the ground that it is not satisfactory, the objection should be made in good faith. It must not be merely capricious. It is declared in 1 Parsons on Contracts, 542, if A. agrees to make something for B. to meet the approval of B. or with any similar language, B. may reject it for any objection which is made in good faith and is not merely capricious. Andrews *v.* Belfield, 2 C. B., N. S., 779, is cited to support this view. That case arose on a written agreement to build a carriage in a manner which should meet the approval of the person for whom it was to be made not only on the score of workmanship, but also that of convenience and taste. It was held that his rejection made in good faith was conclusive.

This "hoist" is unlike those in most general use. They are usually suspended from a wire or rope cable which may be operated either by water or by steam. This is supported by a single upright iron column made in sections which run into each other like the sections of a telescope. It stands under the center of the car. When the sections are folded closely together the car is at its lowest position. On the water being forced into the sections by a steam pump, the pressure of the water within the column causes the sections to draw out, thereby forcing the car upward and so sustaining it. When a valve is opened the water escapes. Then the weight of the car and the weight of the upper sections of the column cause the sections to run into each other, and the car descends.

While the evidence is conflicting as to the efficient working of the elevator, and the weight thereof induced the jury to find the elevator ought to have been satisfactory; yet we think there is evidence to show the plaintiff in error acted in good faith and not in mere caprice in refusing to accept it. We will refer to some. John Doris testified that he ran this elevator about a month; that he would take it from the first to the sixth floor; it would almost drop from the sixth to the third floor, and then it would almost stop, and then go slowly down; it acted the same whether the steam pressure was great or small; it would start and jump in getting up to where we wanted to go; almost every trip it would drop suddenly from the sixth to the third floor; if we put on a load it would jump all the way up. John Norris who rode on it four or five times says "it was jerky and every little period it gave a little jerk, causing your stomach to rise." Albert Merritt

testified he had ridden on them; but they were so unsatisfactory and uncertain that he preferred to walk up stairs; they would stick both going up and coming down. He had one of the same kind which he says was not entirely completed although two or three months were occupied in trying to put it in order; he "considers them the biggest frauds he ever saw in the elevator line." S. Lloyd Wiegand a mechanical engineer of twenty-eight years experience testifies that "a building of moderate height can use them very well; it don't work well in a tall building." Hale the architect of the building rode on it and saw it often. He says it did not run smoothly; at the end of every section it would give a jerk and a click. He examined this and others of the same kind to report to plaintiff in error, and "came to the conclusion that it would never do as a passenger elevator on which ladies were to ride." He informed the agent of the contractor that the elevator was a failure. Plaintiff in error also testified to its jerking and irregular motion being such as to scare him, and his fear of an accident; of notice to the agent that it was unsatisfactory; and of his offer to give $500 if he would take it out.

It may have been very unwise in the maker of this elevator to agree to expend labor and furnish materials, and rely for payment on the uncertain approval of one so largely interested in determining whether it was satisfactory to himself. Having however entered into a contract whereby he did run this risk, his legal rights are to be determined thereby: McCarren *v.* McNulty et al. *supra:* In Nelson *v.* Von Bonnhorst, 5 Casey, 352, one gave a written instrument under seal admitting an indebtedness to another in a specific sum which he agreed "to pay whenever in my opinion, my circumstances will enable me to do so." It was held that the instrument imposed no legal obligation which could be enforced by action, as the maker was the sole judge of his ability. In that case there was an unquestioned indebtedness to be discharged by the payment of money. Every other person might swear the circumstances of the debtor made him abundantly able to pay, yet that did not determine his legal liability.

It is claimed that the elevator was rejected before it was finished, and if time had been given, it would have been made satisfactory. If in fact it was rejected before it was substantially completed, so that the plaintiff in error could not reasonably determine whether it was or would be satisfactory to him in all respects, then his rejection was prematurely made and under the pleadings would not constitute a bar to the action. If however it was sufficiently completed so he could understand how it would operate he was not bound to wait an

unreasonable time for the entire completion of some minor things.

In so far as the specifications of error are in conflict with this opinion they are dismissed.

> Judgment reversed and a *venire facias de novo* awarded.