## MACKENZIE *v.* MINIS *et al.*

1. Where an employee entered into a written contract with his employer, to continue at least three years if the former proved himself "competent and satisfactory," and agreed to perform all the duties of a first-class gardener and manager of his employer's place, to "the satisfaction" of the latter, he was subject to be discharged if the employer was dissatisfied; and this was not dependent on whether there were reasonable and sufficient grounds for such dissatisfaction.

2. The promisor whose satisfaction is made the test must act honestly and in good faith. His dissatisfaction must be real, not merely pretended.

3. Were it necessary for the employer to have had reasonable grounds for dissatisfaction, there was evidence from which their existence might have been found.

4. Where a servant, in connection with his service, and for the necessary or better performance thereof, occupies a house, free of rent, upon the premises of the master, such possession is not adverse to the master, nor as a tenant, but is treated as the possession of the master.

5. In such a case a tenancy at will or by sufferance does not spring up immediately upon the discharge of the servant. To have that effect, the subsequent occupancy, if alone relied on, must be sufficiently long to warrant an inference of consent to a different holding.

6. Where a servant employed under a contract of the character stated in the first headnote was discharged by his employer, it was his duty to leave the premises and remove his personal goods therefrom. To insist on retaining possession of the house, entering on the land and continuing to treat it as if there had been no discharge, made him a trespasser, although he contended that under the contract he could not be discharged for three years.

7. Under such circumstances there was no error in granting an injunction against the employee (who was alleged to be insolvent, continually trespassing and causing damage of such a character as not to be capable of computation or of being satisfied by an ordinary suit at law).

8. The essential nature of the interlocutory injunction granted being to restrain such a continuing trespass, it was not subject to objection as being mandatory in character, although it included a restraint against the servant from keeping his goods on the master's premises.

9. If there was any error at all in excluding from evidence an affidavit made by the master on the day after the discharge of the servant, for the purpose of causing a warrant to issue to dispossess the latter as a tenant by sufferance, a reversal will not be required where the making of such affidavit was proved by other evidence without objection or conflict, and no injury could have probably arisen therefrom, the injunction being nevertheless fully authorized.

Argued February 3,—Decided March 10, 1909.

Injunction. Before Judge Kimsey. Habersham superior court. December 30, 1908.

Mrs. Louisa P. Minis was the owner of a tract of land called the "Rockwood Place," where she had a summer home. On it was a residence, a gardener's house, servants' quarters, stables, a greenhouse, barn, and other improvements suitable for a well-furnished and convenient summer home. J. F. Minis, her husband, acted as her agent and representative in connection with the property. He employed Mackenzie under the following written agreement:

"Mr. J. F. Minis agrees to employ John Mackenzie as his head gardener to take charge of his place at Clarkesville, Habersham County, Georgia. Mackenzie pays his way and that of his niece to New York, the passage money to be refunded him on his arrival. Mr. Minis pays the railroad fare of Mackenzie and niece from New York to Clarkesville. The engagement is to be at least for three years if Mackenzie proves himself competent and satisfactory. Mr. J. F. Minis agrees to pay Mackenzie the first year eighty pounds per year, the second year one hundred pounds per year, third year one hundred and thirty pounds per year; to provide him a house near Mr. Minis's residence free, and fuel (wood) and vegetables free; also milk as long as the cows are in milk, Mackenzie looking out that all the cows are not dry at the same time; Mackenzie agreeing to look carefully after the cows, fruit-trees, flowers, grapes and greenhouses, and perform all duties incumbent on a first-class gardener and manager, to Mr. Minis's satisfaction, his niece to look after the milk and butter whenever Mr. [and] Mrs. Minis are absent. London, June 26th, 1906.

[Signed] J. F. Minis<br>[Signed] John Mackenzie."

Mackenzie went upon the place under this contract, and commenced work. In December, 1908, Minis gave to him the following written notice of discharge:

"Habersham County, Georgia. To John Mackenzie: You are hereby notified that you are this day discharged from my employment; and you are directed to remove yourself, together with all your effects, from my premises and that of Mrs. L. P. Minis, the farm known as Rockwood Place, not later than six o'clock p. m. on the 8th day of December, 1908. This December, 1908.

[Signed] J. F. Minis,

For himself and as agent for Mrs. L. P. Minis."

Mackenzie claimed that there was no right to discharge him on the part of Minis or his wife, and continued to live in the house on the land where he had been prior to the discharge, and to go upon the land. Mr. and Mrs. Minis filed an equitable petition, alleging the foregoing facts, and also, in substance, as follows: Mackenzie had not proved himself satisfactory, and had not performed the duties incumbent upon him under the agreement, to the satisfaction of Minis or of his wife. They had the right to discharge him and had done so. He refused to leave the place, taking his belongings with him, and persisted in remaining on it, in walking over it, and in using it just as if he had a right to be there, insisting that he could not be discharged until three years after the date of the contract. His relations with them had become such that it was impossible to have anything further to do with him, or to have him on the place; and it was necessary for them to employ another gardener, in order to provide for the crops etc., for the coming year. They needed the gardener's house, and could not get another gardener as long as Mackenzie insisted upon remaining on the place and in possession of the house. There was a great deal of personal property on the place, in addition to the live stock, and the vegetables, flowers, fruit, garden, and the place generally needed attention. Mackenzie was no longer in their employment, and his presence made it impossible for them to enjoy their home or prepare it for their use in the summer time, or to secure a gardener. They were unwilling to leave their property in possession of Mackenzie or subject to his control. He was insolvent and unable to respond in damages, if he should be sued; and the damages would be irreparable, being of such special and peculiar character that they could not be determined or compensated in money. Mackenzie was remaining on the property and using it without their consent and in defiance of their rights and

demands. They had not violated the contract; but if so, they were amply able to respond in damages. They prayed that Mackenzie, "his agents and representatives, be enjoined and restrained from remaining on the premises hereinbefore mentioned, and from keeping his property or effects thereon, and from using the same in any way, or walking over or on the same, and from doing anything in defiance or in violation of the rights of your petitioners as owners and possessors of said property."

The defendant, in his answer, admitted that Minis was the agent of his wife, and that Mrs. Minis herself exercised some acts of control, that the place was improved as plaintiffs alleged, and that the contract was made as set out above. He denied the other allegations. By way of cross-action, he alleged that the plaintiffs were indebted to him in the sum of $462.56, on which were allowed credits for certain articles of personalty, such as shingles, blocks, old fence-posts, old lumber, window sash, barbed wire, piping, and guttering, aggregating $16.15, and leaving a balance of $446.41, for which he prayed judgment.

On the hearing the presiding judge granted an injunction providing that the defendant, "his servants, agents, and representatives be and they are hereby restrained and enjoined from remaining on the premises mentioned in the petition or any part thereof, and from going on the same and keeping their goods thereon, and from interfering with the possession or rights of plaintiffs as to said premises." The defendant excepted.

*Robert McMillan* and *H. H. Dean*, for plaintiff in error.

*J. C. Edwards, Adams & Adams*, and *A. L. Alexander*, contra.

LUMPKIN, J. According to the contention of the defendants in error, in whose favor the presiding judge found in granting the interlocutory injunction, Minis, acting for himself and his wife, lawfully discharged Mackenzie, who was employed as a gardener and manager, and in connection with his employment was living on the land of Mrs. Minis; but the employee claimed that he could not be discharged, refused to leave the place, with his belongings, and persisted in walking over it and using it as if he had a right to be there. The plaintiffs invoked the aid of the court to prevent his continuing to do so. The written contract of employment provided that the engagement should be for at least three years, "if Mackenzie proves himself competent and satisfac-

tory," and that he should "perform all duties incumbent on a first-class gardener and manager, to Mr. Minis's satisfaction." Whether wisely or unwisely, he saw fit to make the "satisfaction" of Minis the test of the performance; not whether he discharged his duties properly or diligently, as a matter of fact, or in such manner as to satisfy the judge or the jury.

1. Parties who labor under no disabilities may make contracts on their own terms, and if there is no fraud or mistake, and the terms are not illegal or contrary to public policy, they must abide the contract. That it may be unwise or disadvantageous to one party furnishes no reason for disregarding it. Suppose that a man who desired a watch should write to a dealer in New York, that he had seen a picture of one in the jeweler's catalogue, but was unwilling to buy it on mere description or representation; that unless he liked it or was satisfied with it on inspection, he would be unwilling to buy it, whether or not it was like the description, and regardless of whether it was in fact a good watch, or whether other people liked it or not; that he must be the judge of whether he was satisfied, and if he was so, he would take it, otherwise not. If, on these terms, the dealer should ship the watch, and upon examination the proposed purchaser should not be satisfied with it and should refuse to take it, certainly the dealer could not recover against him on the ground that the watch was of good quality and workmanship, and he ought to have been satisfied. To a suit for such a purpose the conclusive answer would be that the seller contracted to make the satisfaction of the intended purchaser the test. If the thing ordered were a coat instead of a watch, with the same stipulations, would the case be different? The illustration hypothesizes a more elaborate agreement than that under consideration. But it will serve to show that there is nothing illegal or extraordinary in undertaking to do a thing or furnish an article the acceptance of which shall depend on the satisfaction of the other contracting party.

Where the fancy, taste, sensibility, or judgment of the promisor is involved, there is practical unanimity that if one agrees to accept and pay if he is satisfied with a thing, he can not be compelled to do so on proof that other people are satisfied with it, or that he ought to be. Where the question is one of operative fitness or mechanical utility, there is not perfect unanimity of opinion on

the subject; but the great weight of authority applies the same principle. 9 Cyc. 618-623. In Tyler *v.* Ames, 6 Lans. (N. Y.) 280, it was held that a contract to employ an agent for a year, if he "could fill the place satisfactorily," might be terminated by the employer, when, in his judgment, the agent failed to meet that requirement of the contract. In the opinion of Mullin, P. J., it was said: "If he (the employer) is required to prove facts and circumstances that would justify him in feeling dissatisfied with the manner plaintiff filled his office, it would be annulling this clause of the contract, as, without such a clause, he would have the right to dismiss the plaintiff if he did not properly perform his duties." In Singerly *v.* Thayer, 108 Penn. St. 291 (2 Atl. 230, 56 Am. R. 207), it was held that where an agreement was to make and furnish an article to the satisfaction of a person for whom it was to be made, it was not a compliance with the contract to prove that he ought to be satisfied. In McCarren *v.* McNulty, 7 Gray (Mass.), 139, it was held that "An action for work and labor in making a bookcase, which the plaintiff has agreed in writing to construct for the defendants, of a certain kind and dimensions, 'in a good, strong, and workmanlike manner, to the satisfaction of' one of the defendants, was not maintained by proof that the bookcase was constructed according to the terms of the agreement, without also proving that it was satisfactory to or accepted by that defendant." See also Brown *v.* Foster, 113 Mass. 136 (18 Am. R. 463); Zaleski *v.* Clark, 44 Conn. 218 (26 Am. R. 446); Hart *v.* Hart, 22 Barb. 606; Moore *v.* Robinson, 92 Ill. 941. In the case of Zaleski *v.* Clark, supra, the plaintiff on the second trial obtained a judgment, and it was affirmed in 45 Conn. 397. But the apparent inconsistency is explained by the fact that on the last hearing the question considered was whether the finding of facts on the first trial was res adjudicata on the second trial; and it was held that the grant of a new trial reopened the entire case for a rehearing on the evidence, there having been no separate finding of facts on the second trial. The presumption was that sufficient facts were shown to sustain the judgment. See also 21 Alb. L. J. 465; 22 Id. 20; Allen *v.* Mutual Compress Co., 101 Ala. 574 (14 So. 362); Gwynne *v.* Hitcher, 66 N. J. L. 97 (48 Atl. 571); Johnson *v.* Bindseil, 8 N. Y. Supp. 485; Kendall *v.* West, 196 Ill. 221 (63 N. E. 683; 89 Am. St. R. 317); Tennant *v.* Fawcett, 94

Tex. 111 (58 S. W. 824); Rossiter *v.* Cooper, 23 Vt. 522; Crawford *v.* Mail and Express Publ. Co., 163 N. Y. 404 (57 N. E. 616); Harder *v.* Board of Commissioners, 97 Ind. 455; Koehler *v.* Buhl, 94 Mich. 496 (54 N. W. 157); Singerly *v.* Thayer, 108 Pa. 291 (56 Am. R. 207, 2 Atl. 230); Church *v.* Shanklin, 95 Cal. 626 (30 Pac. 789, 17 L. R. A. 207, and note).

2. The promisor, whose satisfaction is thus made the test, must act honestly and in good faith. His dissatisfaction must be real, not merely pretended. Thus, if a suit of clothes were agreed to be made to the satisfaction of the purchaser at a fixed price, if they were in fact satisfactory to him, he could not feign dissatisfaction in order to get out of the contract, merely because another similar suit was offered to him at a less price. This would not be dissatisfaction; it would be fraud. Some courts have held that if a test of a reasonable character is necessary to determine fitness, the person to be satisfied must make such test or allow it to be made. So, if an employer should agree to pay for the services of an employee at a given rate, if they were satisfactory to him, he should give the employee a trial. Some of the decisions which are apparently in conflict with the ruling above stated may be distinguished by reason of the particular facts involved in them. Some may be reconciled with the general rule by taking into consideration the element of good faith or mere pretense of dissatisfaction. A few are in direct conflict with it. 9 Cyc. 624. The rule is tacitly recognized in *Baldwin Fertilizer Co.* v. *Cope,* 110 *Ga.* 325 (35 S. E. 316).

3. Were it necessary for the master to have some reasonable ground for dissatisfaction, there are indications in the defendant's answer and affidavit, that, while acting as manager and head gardener for the plaintiffs, he sold to himself and carried to his own place certain wire, guttering, piping, etc. He stated in his affidavit that these things were of no use to his employers, and were of use to him, and that Minis had authorized him to sell and had ratified the sale of some like useless articles, by accepting pay therefor; and he entered these things as a credit upon the amount which he claimed to be due him by the plaintiffs. It also appeared from his affidavit that he borrowed a few tools, such as a saw, a hammer, a square, a plane, etc., with which to do some repairing on a place which he himself had bought; and that Minis

had sworn out criminal warrants against him, alleging larceny on his part, and a possessory warrant to recover the alleged stolen goods, but the trial of the latter had resulted in favor of the defendant. Whether these acts were criminal or furnished a proper basis for a possessory warrant or not, an agent with authority to sell property for his principal is not generally authorized to buy it for himself without the assent of the principal; and whether the borrowing of an employer's tools for use on work of his own would authorize the action taken by the employer or not, these things might furnish a very reasonable ground for dissatisfaction on the part of one who by the contract was to be satisfied. Without intimating any opinion, therefore, as to the merits of the cases arising under the warrants, we hold that there was no error on the part of the presiding judge, under the evidence, as to this feature of the present case.

4-6. The next question which arises is whether the employee occupied the premises of the employer, or a portion of them, as a tenant, so that he could decline to relinquish possession or to stay off of the property, after being discharged. Where a servant occupies a dwelling-house belonging to the master, free of rent, as incidental to and connected with the performance of his duties as such servant, if he quits the service of the master before the expiration of the term, or is discharged by the master, his right to the possession of the dwelling-house ceases, and he must surrender it. In such cases, in the eye of the law, the master has never parted with possession of the premises, the servant's possession being regarded as that of the master. Hence the master may enter and use such reasonable force as may be necessary to expel the servant. It has been said, that, "when a servant has been discharged, the master's right in this respect does not depend upon the question whether the servant is rightfully or wrongfully discharged, but exists in the one case as well as in the other, the master incurring the peril of paying damages for a breach of the contract if the discharge is wrongful; but the right to expel a servant from the house exists, whether he had good cause therefor or not." Wood on Master and Servant (2d ed.), §155, p. 304 et seq. It is possible for one to be a servant, and at the same time a tenant of his master. He may have a contract of employment, and also a contract to rent a dwelling or parcel of land. If so, his right to re-

tain possession of the premises, or to require a proceeding to remove him as a tenant, depends on the contract involved. It has been said: "If the occupation is connected with the service, or if it is required expressly or impliedly by the employer, for the necessary or better performance of the service, then it is for his benefit, and he continues in possession. The question is, whether it is subservient and necessary to the service." Ib. 308; Haywood v. Miller, 3 Hill (N. Y.), 90; People v. Annis, 45 Barb. (N. Y.) 304; Regina v. Spurrell, L. R. 1 Q. B. 74; The King v. Kelstern, 5 M. & S. 136. "In such case a tenancy at will or at sufferance does not spring up immediately upon the termination of the service; to have that effect the subsequent occupancy must be sufficiently long to warrant an inference of consent to a different holding." Kerrains v. People, 60 N. Y. 221 (19 Am. R. 158). The termination of service there was by a discharge.

In the case before us, Minis, with the knowledge, consent, and approbation of his wife, who owned the property, contracted with Mackenzie to employ the latter as head gardener to take charge of the place. The engagement was to be for at least three years, "if Mackenzie proves himself competent and satisfactory," and also that he should "perform all duties incumbent on a first-class gardener and manager, to Minis's satisfaction." The employer agreed to pay him a certain stipulated amount per annum, and to provide him free a house near the main residence on the land, and also fuel and vegetables. The employee was to look after the cows, fruit trees, flowers, grapes, and greenhouses. He was also to have milk as long as the cows were giving it, and his niece was to look after the milk and butter when he was absent. It is evident from the reading of the contract that the furnishing of the house upon the place to the manager and head gardener was an incident to the service, and for the purpose of aiding in its discharge, and was not a letting of any part of the property to him as a tenant of the owner. The occupancy of the house was directly connected with the service to be rendered, and for the better performance thereof. In law, therefore, the employer did not resign possession to the employee as to a tenant, but the possession of the employee was in effect that of the master. When the employee was discharged, it was his duty to resign possession and to leave the premises. He had no right to persist in remaining on the place, walk-

ing over it, and using it as if he had not been discharged. Nor could he do this because he insisted that he could not legally be discharged for three years from the date of the contract. If in any case an action at law for a breach of contract, brought by a discharged employee against his employer, would not furnish a sufficient remedy if the discharge were wrongful, this is not such a case. There was no contention that the plaintiffs were not solvent and able to respond in damages, if any should be recovered against them, and there was nothing to show that irreparable damages would accrue to him. The employee was not invoking the aid of the court, but was seeking to compel the continuance of the contract of employment, or at least the retention of some of its benefits, after his discharge, by merely insisting on remaining on the place, and dealing with the property as if he had not been discharged.

7. It was contended that an application for injunction was not the proper remedy. In 20 Am. & Eng. Enc. Law (2d ed.), 36, it is said: "Where a servant has been discharged and ordered to leave the master's house or premises, and remains, he is a trespasser whether the discharge was rightful or not; and the master may eject him, using as much force as is necessary, but not more, and may remove the servant's goods from the house or premises." See also Champion *v.* Hartshorne, 9 Conn. 568; Foye *v.* Sewell, 21 Abb. N. Cas. (N. Y.) 15; Haywood *v.* Miller, supra; Perret *v.* Sanchez, 12 La. Ann. 687; Kerrains *v.* People, supra. If the discharged employee was a trespasser, and the employer had the right to remove him and his goods from the property, and even to use such reasonable force as might have been necessary for that purpose, but not more, was he obliged to resort to the use of such force, which might involve a personal conflict and serious consequences, for the purpose of asserting his rights, rather than to appeal to the law for their enforcement? In Stamford *v.* Stamford Horse R. Co., 56 Conn. 381 (15 Atl. 749, 1 L. R. A. 375), an injunction was asked by a borough to restrain the company from laying down its track in a street. The right of the borough to forcibly remove the track was insisted upon as a ground for questioning the jurisdiction of a court of equity. But the court sustained the injunction, adding: "And none the less so because of its right to remove the track by force. As a rule, injunctions are

denied to those who have adequate remedy at law. Where the choice is between the ordinary and the extraordinary processes of law, and the former are sufficient, the rule will not permit the use of the latter. In some cases of nuisance and in some cases of trespass the law permits an individual to abate the one and prevent the other by force, because such permission is necessary to the complete protection of property and person. When the choice is between redress or prevention of injury by force and by peaceful process, the law is well pleased if the individual will consent to waive his right to the use of force and await its action. Therefore, as between force and the extraordinary writ of injunction, the rule will permit the latter." This statement was quoted with approval by the Supreme Court of the United States, In Re Debs, 158 U. S. 564, 582 (15 Sup. Ct. 900, 39 L. ed. 1092), and in the opinion Mr. Justice Brewer said: "Grant that any public nuisance may be forcibly abated, either at the instance of the authorities, or by an individual suffering private damage therefrom, the existence of this right of forcible abatement is not inconsistent with nor does it destroy the right of appeal in an orderly way to the courts for a judicial determination, and an exercise of their powers by writ of injunction and otherwise to accomplish the same result." It can not be successfully contended that because the plaintiffs might have used reasonable force for the purpose of removing the defendant and his effects, they were compelled to use such force rather than to apply to the court for relief. This becomes specially evident when it is remembered that the owner of the property and the substantial employer is a woman, and the employee is a man.

Did the plaintiffs have any other legal remedy which would afford them adequate relief? A criminal prosecution would not do so. Such a case, though instituted by a prosecutor, would be a proceeding between the State of Georgia on the one part and the accused on the other, to punish a violation of the criminal law, if one has taken place. It would not be a civil remedy for the purpose of enforcing the rights of the employer. A proceeding under the Civil Code, §4823, alleging forcible entry or detainer, would not lie, because the controversy has not reached the point of using force so as to bring it within that statute (*Curry* v. *Hendry,* 46 *Ga.* 631; *Coker* v. *McKinney,* 68 *Ga.* 289); and we have just shown that the employer is not compelled to press it to that condi-

tion before appealing to the court for relief. A summary proceeding against the discharged employee as an intruder, under the ·Civil Code, §4808, would not furnish a sufficient remedy, for two reasons: first, to be an intruder, within the meaning of the statute, ‾the original entry must have been unlawful. *Murdock* v. *Miller,* :21 *Ga.* 368; *Thompson* v. *Glover,* 120 *Ga.* 440 (47 S. E. 935). 'The element of good faith in claiming a right of possession is ·also involved, the code section cited requiring that the affidavit made in order to commence the proceeding shall state that the ‾person against whom it is directed "does not in good faith claim ·a right to such possession, and yet refuses to abandon the same;" second, the person claimed to be an intruder may tender a counter-·affidavit and make an issue for trial. No bond is required of him; ·and if the plaintiffs in this case were compelled to proceed against the defendant in the manner so provided, the discharged employee ·could accomplish his purpose and remain upon the land of his ·employers by simply making a counter-affidavit denying that he was such an intruder. A proceeding to evict him as a tenant at :sufferance would not suffice, because, as we have already seen, he is ‾not a tenant. An action for damages against him as trespasser would not furnish adequate relief, because the trespass does not ·consist of a single act, but is continuing in its character, which might involve multiplicity of suits; and it is also charged that the ·defendant is insolvent, and a recovery against him would be of no value. We do not know of any remedy at law which would fur·nish complete and adequate relief to the plaintiffs. If, therefore, the discharged employee has no right to insist upon entering and remaining upon the premises and dealing with them as if he were :still employed there, and if against his trespasses so committed the plaintiffs are entitled to relief, it follows that they may apply to a ·court of equity; and the only sufficient remedy which can be furnished being by the writ of injunction, that writ is available to them. If the defendant could insist on remaining upon the land until the end of a common-law proceeding adjudicating him to be ·a trespasser, which we have shown he is, then through "the law's ·delay," that is, the necessary time which would elapse before the final adjudication, he would have accomplished the very thing which ‾we hold to be illegal. Under such circumstances the plaintiffs are entitled to present relief. See *Scott* v. *Scott,* 30 *Ga.* 102. The

defendant in this case did not demur to the proceeding in equity by the plaintiffs, but denied the substantial allegations of the petition, and set up a counter-claim to recover judgment for what he asserted was due to him. Had he demurred to the petition for want of equity, it is apparent from what has been said above that his objection would not have been sustainable.

8. It was contended, that, as the defendant had already entered on the land and his personal chattels were there, a court of equity would not by injunction compel their removal; that this would be in the nature of a mandatory injunction, which a court of equity will not grant in this State. We recognize the general rule that an injunction can only restrain, and can not compel performance. Civil Code, §4922. "While under the code an injunction which is purely mandatory in its nature can not be granted, the court may grant an order the essential nature of which is to restrain, although in yielding obedience to the restraint the defendant may incidentally be compelled to perform some act." *Goodrich* v. *Georgia R. Co.*, 115 *Ga.* 340 (41 S. E. 659). An interlocutory injunction can not be used, where the real substantial purpose is to obtain affirmative relief by compelling the performance of some act. But where the essential nature and purpose of the injunction is not to compel the performance of an act, but to restrain, this may, and sometimes does, incidentally involve some affirmative action in order to make the restraint effective, and not a mere mockery. No precise line can be established, mathematically and absolutely dividing the one condition from the other, but the actual difference is substantial, and nearly always palpable. To illustrate: An interlocutory injunction could not properly be granted to compel specific performance of a contract of sale, although it were shaped so as nominally to restrain the defendant from refusing to convey. There the real purpose would be to compel affirmative action. On the other hand, if an insolvent trespasser should enter upon land and begin cutting down the timber upon it, or tearing down and destroying the houses or other valuable improvements there located, he could be enjoined from further trespassing, although obedience to the order might involve affirmatively the removal of his tools and vehicles with which he intended to haul away the wood when cut. Against such an injunction it would be no valid objection to say that he had already set foot upon the land before

the injunction was granted, or that he had already begun to cut the trees, or had already driven his wagons upon the premises. The main, substantial purpose of the order would be to restrain, although incidentally some affirmative action on the part of the defendant might be necessary in order to yield obedience to the injunction. Very commonly the intention to do an irreparable injury is not so clearly manifested as to furnish ground for an injunction, until the wrong has been commenced; but it will not oust the court of its jurisdiction for the wrong-doer to say that he has reached the property and begun the commission of the wrong before the plaintiff can reach him with an injunction. In *Russell* v. *Mohr-Weil Lumber Co.,* 102 *Ga.* 563 (29 S. E. 271), and in *Vaughn* v. *Yawn,* 103 *Ga.* 557 (29 S. E. 759), the right of possession of land was in controversy between two parties; and it was held that the writ of injunction could not be used to oust one of them from the actual possession and admit the other into possession of the premises. This is very different from the case at bar, where the employee has no claim of title or right of possession adverse to his employers. Here too the main, substantial relief sought was to restrain the continuing trespass by the discharged employee, who was alleged to be insolvent, upon the premises of the employers. It was alleged that the vegetables, flowers, fruit, garden, and the place generally needed immediate attention; that while the defendant persisted in his conduct the plaintiffs could neither enjoy their home, nor prepare it for their use in the summer time, nor secure another gardener. His conduct gives legitimate ground for injunction. If this should be held otherwise, every cook who might be discharged, although rightfully, might insist upon entering and remaining in the kitchen, and using the utensils, by claiming that the discharge was unlawful. Every housemaid, when discharged, might continue to enter the house and rooms of her former employer, and to handle the furniture or other articles of personalty, by refusing to recognize the discharge. Every coachman, after being discharged, might insist upon entering the stables and handling the horses, because he claimed that his discharge was improper. In fact every servant could refuse to be discharged, or to recognize the discharge, and insist on continuing to act as if there had been none, and the employer would be helpless.

9. The defendant offered in evidence an affidavit which had

been made by Minis for the purpose of dispossessing him on the day after he was discharged. This affidavit proceeded on the theory that the discharge made Mackenzie a tenant at sufferance, and subject to be dispossessed as such. We have already seen that this was an erroneous view. Had there been a considerable lapse of time or other circumstances which rendered it a legitimate subject of controversy whether Mackenzie was a tenant or a servant occupying a portion of his master's premises, this affidavit would have been admissible to throw light on that subject, as an admission on the part of the person making it. But where it was evidently made merely under a mistaken idea of the correct mode of enforcing the right of the master, and was later followed by a proper proceeding, its rejection furnishes no ground for reversing the judgment or refusing the grant of the injunction. It may also be stated that the affidavit which was excluded was not accompanied by any warrant or other record, or proof that the proceeding was still pending, or that there had been an adjudication when the equitable petition was filed; and that the affidavit of Mackenzie, which was introduced in evidence without objection, stated that Minis swore out a dispossessory warrant against him, alleging that he was a tenant at sufferance. So that the fact to show which the affidavit could have been introduced was otherwise proved. This was not a case of election between one of two remedies which were open to a plaintiff; but an error in selecting a remedy which would not lie, and the subsequent enforcing of one which was proper. *Judgment affirmed. All the Justices concur.*