## BECK v. KAH et al.

1. "An injunction can only restrain; it can not compel a party to perform an act." An injunction dispossessing one party and admitting another to possession is equivalent to a mandatory injunction. Injunction is not available for the purpose of accomplishing an eviction, or to prevent interference with realty by one already in possession.
2. The evidence did not authorize the grant of an interlocutory injunction in the present case.

No. 5450. DECEMBER 18, 1926.

Petition for injunction. Before Judge Malcolm D. Jones. Bibb superior court. March 13, 1926.

*Walter DeFore* and *James C. Estes,* for plaintiff.

*Martin, Martin & Snow* and *L. Thomas Gillen,* for defendants.

RUSSELL, C. J. In the year 1925 W. C. Beck cultivated the farm which is the subject of the controversy in this case. During the latter part of the year W. C. Kah, who was then living in Jacksonville, Florida, purchased the premises from Beck's former landlord. After the purchase by Kah he and Beck entered into a contract by which Beck was to continue upon the land and cultivate the same for the year 1926. In some portions of the record Beck is referred to as a cropper; but it appears from the evidence that he did not occupy that relation in the technical sense of the term, for the reason that it was agreed that the landlord should have no control of the cultivation of the land, which is one of the absolute rights of the landlord where the relation of landlord and cropper exists. Beck was to use his own judgment in the operation of the farm, doing the work according to his own judgment and discretion, and not subject to the orders of Kah as to the manner in which the work should be done. Kah was to furnish two mules, farming implements, one half of the fertilizer, and a specified amount of money to be advanced to Beck in monthly installments. Beck was to furnish the necessary labor, and was to have the right of the use and occupancy of the dwelling-house and all other buildings on the premises, the garden appurtenant to the dwelling for his own separate use, necessary wood for the use of himself and family, and exclusive use of the pasture and pasturage. Beck was in the exclusive and undisturbed possession of the premises when Kah opened negotiations for a rescission of the contract. Beck notified Kah in writing that he had begun the per-

Injunctions, 32 C. J. p. 22, n. 24; p. 351, n. 84.

formance of his contract by preparing the land for cultivation, but would agree to surrender the premises if a certain sum were paid him, which he must have before he would move. Kah wrote Beck a letter from Jacksonville, Florida, announcing receipt of Beck's letter which named the sum payable to him. However, this was not paid, and on February 27, 1926, Kah came upon the premises with his family and household furniture and demanded he be put in possession of the premises. Beck advised Kah that unless the sum agreed upon was paid he would stand upon his original contract. Kah moved his family into a vacant house on the premises, and proceeded to take charge of the farming operations as far as he could. Beck retained possession of the main dwelling-house and its appurtenances, including the well which afforded the only water supply upon the farm. Kah went before a justice of the peace, who is one of the defendants in error, and made affidavit to dispossess Beck as a tenant holding over. Thereupon Beck, on March 2, 1926, filed a petition for injunction against Kah, Henley, the justice of the peace, and Gordon Grindle, in which, after setting out the facts just stated, he prayed that the defendants be enjoined from interfering with his free and uninterrupted possession of the premises in question. He further prayed that Kah and Grindle be enjoined from occupying the premises or any part of the same during the year 1926, and that the defendants be enjoined from proceeding with the dispossessory warrant. Upon the interlocutory hearing on this petition the court passed an order continuing the temporary restraining order as to the dispossessory warrant until further order of the court; also restraining Kah and Grindle from interfering with the free and uninterrupted possession of Beck as to the premises in question. However, it was provided that the latter portion of the restraining order might be dissolved by Kah giving bond in the sum of $300 to pay any and all damages which might be recovered in the pending suit of Beck. No exception was taken to this judgment. On March 12, 1926, Beck filed an application ancillary to his main action, alleging that Kah had gone before Henley and procured a peace warrant against him, and that there was no basis for the issuance of the peace warrant, but that it was taken out in furtherance of a conspiracy between the defendants to oust Beck from the possession of the premises. Beck also alleged that

Kah was threatening to continue to go before his confederate, Henley, and to continue to obtain warrants and keep said Beck in jail unless he gave up the premises in question. Upon this petition a temporary restraining order was granted. In response thereto Kah set up that it was necessary for him to have the use of the entire premises, that there was but one well of water on the place, but one barn, and only one person could occupy the place with any satisfaction or profit; and he alleged that, since he had complied with the order of the court by giving bond, he was entitled to free and unmolested use of the premises, and prayed the court to require Beck to vacate the premises and enjoin him from interfering in any way with Kah or his family or from trespassing on the premises. Upon the hearing Beck introduced evidence to the effect that the peace warrant had been issued as alleged by him, that the only foundation for its issuance was the fact that Beck told Kah to stay out of his, Beck's, yard, and that Kah had threatened to obtain warrants until he, Beck, removed from the premises. Kah testified, that he had given bond as required by the court's order of March 5; that there was but one well of water on the place, which was in the yard of the house occupied by Beck; that it was necessary that Kah use the water from the well in order to carry on his farming operations; that it was also necessary for him to use the barn and outhouses; that he could not farm with Beck in the house, and wanted him moved out. He admitted that prior to his swearing out the peace warrant Beck had done nothing other than say to him, when he went to the well at Beck's house to get water, "I have told you to stay out of my yard, and I mean for you to stay out." Upon this evidence the presiding judge granted an order in which, after construing the evidence adduced before him, "the plaintiff, W. C. Beck, is enjoined from interfering in any way with the defendant W. C. Kah or his wife in occupying, possessing, or using the premises in dispute." The order contained the following provisions: "This injunction shall not become operative until the plaintiffs have increased the $300 eventual condemnation-money bond already given to $750, said additional bond to be approved by the clerk of this court, conditioned and payable like the former bond." It is to this order forbidding him to interfere in any way with Kah occupying, possessing, or using the premises that Beck excepts.

1. We think the learned trial judge erred in enjoining the plaintiff in error "from interfering in any way with the defendant W. C. Kah or his wife in occupying, possessing, or using the premises in dispute." It is true that the Code (§ 5497) provides that "The granting and continuing of injunctions must always rest in the sound discretion of the judge, according to the circumstances of each case;" but we think it was error to grant the foregoing order in this case, for two reasons. First, because according to the undisputed evidence Kah had leased the premises for the year 1926 to Beck, and only a probable rescission of the contract had been discussed by the parties to the contract. Kah does not dispute Beck's testimony upon this point. He does not deny that he rented the land to Beck for 1926 upon the precise terms as stated by Beck. He does not deny that Beck made his agreement to rescind, conditional upon the payment of the sum which Beck claimed to be the value of work already done in preparing the land for a crop in 1926. He does not claim to have paid or to have tendered to pay what Beck claimed to be due him. He is of the opinion, perhaps, that Beck did not work or that the work done by him was not worth what Beck claimed. But that does not alter the case, because under the terms of the contract he had no right to rescind, especially as early as February 12, where the entire and exclusive control of the cultivation had been left to the party who was to furnish the labor. Therefore it is our opinion that Beck was entitled to the possession of the premises, under the undisputed evidence, unless there had been an actual rescission of the contract. Unless the contract was rescinded, he was in possession and entitled to possession, and injunction would not be a proper remedy by which to effect an eviction. *Vaughn* v. *Yawn,* 103 *Ga.* 557 (29 S. E. 759) ; *Glover* v. *Newsome,* 134 *Ga.* 375 (67 S. E. 935). If there were in the present record unequivocal evidence upon the part of Kah in contradiction of the testimony of Beck that Beck agreed to surrender possession without any condition, an altogether different case would be presented. In that event the credibility of the conflicting witnesses would be a matter solely in the discretion of the trial judge. He would have the right to adjudge that the original contract had been rescinded, and that Kah was entitled to recover possession of his farm, regardless of whether injunction was the proper remedy or not. But,

as we have already stated, there is no evidence in contradiction of the fact that some terms had been proposed as a consideration to induce Beck to rescind the contract and surrender possession, and that these had not been complied with.

2. It was error in the present case to grant an interlocutory injunction, because some of the facts just referred to were apparently evidence to the court. Beck had not surrendered possession, whether his possession was lawful or wrongful, or even though he had made preparations to find another place of abode in such an eventuality of being evicted. For that reason the injunction was mandatory, and therefore unauthorized by law. An order enjoining Beck from interfering in any way with Kah's occupancy, use, or possession of the premises in dispute is nothing more or less than an equivalent of an order to Beck to remove at once from the premises. Upon Kah's petition and prayers and the statement therein that he wanted the house and well where Beck was, because he could not conduct his farm without them, Kah was asking and was granted such exclusive possession for himself and wife as was incompatible with even concurrent possession on the part of Beck and his family. So it seems to us perfectly plain that the order can not be otherwise construed than as a mandate to Beck to remove. Consequently the injunction is mandatory, and it was not within the power of the judge to thus evict the plaintiff in error from his possession, though some other lawful means might have been applied. "The office of an injunction being, under the code of this State, merely to restrain and not to compel the performance of an act, this remedy is not available for the purpose of evicting a party from the actual possession of land, the right to which is in dispute between himself and another; and consequently such a result can not be indirectly accomplished by an order restraining the party so in possession 'from further interfering with said lot of land, house and crop' thereon. Such an order, being mandatory in its nature, would afford relief not within the proper scope of the writ of injunction. Civil Code, § 4922. *Russell* v. *Mohr-Weil Lumber Co.,* 102 *Ga.* 563 [29 S. E. 271]. Applying this established rule to the facts of the present case, the court erred in granting the injunction 'as prayed for.'" *Vaughn* v. *Yawn,* supra. Also in *Glover* v. *Newsome,* supra, this

court held: "An interlocutory injunction which, if enforced, would result in the dispossession of the defendant and the admission of the plaintiff into possession of the premises in controversy, is in legal effect a mandatory injunction; and the relief afforded by this injunctive order is not, under our law, within the proper scope of the writ of injunction." See also *Kerr* v. *Black,* 137 *Ga.* 832 (74 S. E. 535); *Mize* v. *Herring,* 137 *Ga.* 812 (74 S. E. 534); *Brown* v. *Cole,* 138 *Ga.* 433 (75 S. E. 334); *Dekle* v. *McLeod,* 144 *Ga.* 289, 291 (86 S. E. 1082); *Wilkes* v. *Folsom,* 149 *Ga.* 512 (101 S. E. 185); *Brown* v. *Toole,* 150 *Ga.* 196 (2) (103 S. E. 226); *Hopkins* v. *Vance,* 153 *Ga.* 754 (113 S. E. 157); *Trudie Turpentine Co.* v. *Pearson,* 159 *Ga.* 388 (2) (125 S. E. 862). The *Kerr* case, supra, is very similar on its facts to the case at bar. This case is distinguished by its facts from that of *Mackenzie* v. *Minis,* 132 *Ga.* 323 (63 S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723), and similar cases, in that in the cases just referred to the person sought to be evicted was a mere employee. In the *Mackenzie* case the overseer was working for a monthly salary and was supplied with a home as part of his compensation, but was not otherwise personally interested in the premises, nor was he a tenant.

*Judgment reversed. All the Justices concur.*