1. While under numerous decisions of this court injunction is not an available remedy to evict a person from actual adverse possession of property and to admit another, thus in effect compelling the performance of an affirmative act and in violation of the Code, § 55-110, still an injunction will lie in a meritorious case, at the instance of a wife who is suing her husband for divorce on the ground of cruel treatment, to enjoin him from entering her own dwelling house and eating and sleeping there over her protest and against her consent. Lyon v. Lyon, 102 Ga. 453 (31 S.E. 34). Compare *Page 691 Mackenzie v. Minis, 132 Ga. 323 (63 S.E. 900); Marshall v. Matthews 149 Ga. 370 (100 S.E. 103); Killian v. Chowkee County, 169 Ga. 313 (150 S.E. 158); Rosser v. Styron, 171 Ga. 238 (155 S.E. 23).
2. Where the petitioner brought an action against the husband on the ground of cruel treatment, and also sought to enjoin him from remaining in the home occupied by them, and such other and further relief as to the court might seem proper, and on a hearing there was evidence authorizing the court to find that the title to the dwelling house was in the wife, she having owned certain property at the time of her marriage and by successive trades having acquired the present home and that certain payments on the outstanding purchase-money notes made by the husband in each transaction and claimed by him to give him an equity in the property were made, as contended by the wife, under an agreement after their marriage that he should live in her home with her and make such payments instead of paying rent elsewhere, and that, therefore, he had no equity in or adverse possession of the premises, and that she had ceased to live with him as his wife because of alleged acts of cruel treatment towards her and had ordered him to vacate — the court did not err in enjoining him, on the interlocutory hearing, from entering upon the premises after a named date.
Judgment affirmed. All the Justicesconcur.
 No. 15437. MAY 10, 1946.
 STATEMENT OF FACTS BY DUCKWORTH, JUSTICE.
Mrs. Marene F. Lee brought an action against F. L. Lee, her husband, seeking by the petition as amended a divorce on the ground of cruel treatment, temporary and permanent alimony and counsel fees, and an injunction to prevent him from remaining in her residence, which they were occupying at the time the original petition was filed, and such other and further relief as to the court might seem proper. The husband answered and denied the allegations of cruel treatment, admitted that the legal title to the property was in the wife, but set up that he had invested in the purchase of the home claimed by the wife an amount in excess of $4000, and that he was entitled to joint possession of the property. He prayed that the wife be enjoined from selling or disposing of the property unless she first settled with him for his equity, and that his equity be determined by the court.
On an interlocutory hearing the court refused to grant alimony or counsel fees, but enjoined the defendant from entering upon the premises after January 11, 1946. The defendant excepts to the judgment, but the sole contention here is that the grant of the *Page 692 
injunction was mandatory in nature, in that it in effect compelled him to remove himself from the premises, and therefore was illegal.
On the question of injunction, the evidence may be substantially set forth as follows: The petitioner testified that she and the defendant were married in March, 1941. At the time of the filing of the original petition and the amendment the parties were occupying a residence at 714 Ponce de Leon Avenue, Decatur, Georgia, but not living together as husband and wife, but in separate bedrooms. At the time of her marriage she owned an equity in property on Winona Drive in Decatur, on which she was paying regular monthly notes, and the defendant assumed the payment of the outstanding notes. Subsequently she made other purchases, trading in one piece of property for another, finally acquiring the property at 714 Ponce de Leon Avenue, Decatur, Georgia, and the defendant paying the notes on the unpaid purchase-price in each instance until the next trade was made. From the time of the purchase in April, 1944, the defendant, commencing with the payment for May, paid monthly purchase notes of $73.54 each, making a total of $1397.24 through November 3, 1945. Since filing her suit on November 13, 1945, the petitioner, however, paid the purchase-money notes for December, 1945, and January, 1946. She testified that the payments of the purchase-money notes by the defendant were under an agreement that he would pay these notes instead of paying rent elsewhere. The husband had worked during their married life with the exception of the occasion when he was sick for a few months. He had lately become cross, quarrelsome, and extremely vexatious to her, and as a result she was rendered very nervous, and owing to the conduct of the defendant she was unable to secure necessary rest and was made mentally ill. He had been guilty of getting up early in the morning, creating a considerable disturbance in the house, and he would return late at night and cause a disturbance. He would go into the bathroom and take baths late at night, singing in loud tones for the purpose of upsetting and worrying the petitioner. When he would pass her door, he would knock on it with his fist so as to alarm and disturb her. He would go to the basement for the purpose of stocking the furnace, and would create undue and unnecessary noise while in the basement, all for the purpose of harassing and worrying the petitioner. He would walk around *Page 693 
in the attic late at night, making loud and unnecessary noises, all for the purpose of worrying her and disturbing her rest and peace of mind. He would go for days at a time without talking, and would sulk and show displeasure with the petitioner.
The defendant denied all of the statements of the petitioner as to any misconduct on his part, and said that he desired to continue their married life and to contribute to the expenses of the home to the extent of his ability. He had paid something in excess of $4000 on the purchase-price of the property, and considered that he had an equity therein to the extent of the amount which he had contributed towards its purchase. He had paid the monthly notes on the various pieces of property, as outlined by the petitioner, until the payment which he made on November 3, 1945, when he tendered and offered to pay the expenses on the property, but the petitioner declined to accept any payment from him. At the time the petition was filed, he was employed at a local laundry, earning about $20 to $22.50 per week, but had lost this position because of the return of a former employee who had been in the military service. The only income he now has is from an annuity which he receives as a mail carrier, amounting to $77 per month after deduction of withholding tax, and it would be impossible for him to continue to pay out of the $77 the purchase-money notes of $73.54 in addition to his personal expenses around the home. The petitioner had repeatedly requested him to move from the property, as she had two sons who were returning from military service, and she desired that they occupy his room and that he vacate the same. Nevertheless he had continued to occupy the home.