WOODSON *v.* McLAUGHLIN.

Opinion delivered October 31, 1921.

1.  MASTER AND SERVANT—RELATION OF LANDLORD AND SHARE CROPPER.
    —Where a landlord employed one as a share cropper to cultivate and gather a crop for one-half of it, this constituted the relation of landlord and laborer, and not that of landlord and tenant.

2. MASTER AND SERVANT—DISCHARGE—SURRENDER OF PREMISES.—
   Where, as part of the contract price for cultivating and gather-
   ing a crop, the share-cropper was furnished a house, he had no
   interest in the premises, and when his contract of employment
   was terminated by his discharge, it was his duty to vacate the
   premises, regardless of whether the discharge was rightful or not.

3. MASTER AND SERVANT—WRONGFUL DISCHARGE—DAMAGES.—Where
   a land owner, having contracted with another to allow him to cul-
   tivate his farm on the shares for a year, orders him off the farm
   before the end of the year, and refuses to let him gather the
   crop, the share-cropper can maintain an action at once against the
   land owner and recover as damages the value of such cropping
   contract, but not any injury done to his person or that of his
   wife.

Appeal from Pulaski Circuit Court, Third Division;
*A. F. House*, Judge; affirmed.

### STATEMENT OF FACTS.

J. F. Woodson and Mrs. Mollie Woodson, his wife,
brought this action in the circuit court against C. L.
McLaughlin and M. W. Davis, and for cause of action
states that said defendants wrongfully, maliciously, and
forcibly compelled them to remove from a tenant house
on the farm of McLaughlin which they were occupying
while gathering a crop on said farm.

J. F. Woodson was a witness for himself. Accord-
ing to his testimony, in 1919 he was a share cropper on
the farm of McLaughlin. McLaughlin furnished Wood-
son the land and a tenant house to live in while he culti-
vated and gathered the crop, and Woodson was to receive
one-half of the crop in payment for his services in mak-
ing and gathering it. Woodson was delayed in gather-
ing his cotton on account of the excessive rains in the
fall of the year. McLaughlin asked Woodson to move
out of the house in which he lived so that he might roll
it to another part of the farm. Woodson refused to do
this. McLaughlin hired M. W. Davis, his co-defendant,
to move the house for him, and, under the directions of
McLaughlin, he first tore the kitchen away from the main
part of the house and rolled it some distance away.
This left large cracks in the dwelling house. It commen-

ced to rain and snow and by reason of the open places left in the wall the rain and snow beat into the main dwelling house and caused Mrs. Woodson to become ill. Woodson and his wife then moved out of the house and brought this suit for damages.

The circuit court directed a verdict in favor of the defendants, and from the judgment rendered the plaintiffs have appealed.

*Geo. M. Heard* and *Jno. D. Shackleford,* for appellants. ·

. The court erred in peremptorily instructing a verdict for defendants.    126 Ark. 31.

The contract was for the cultivation of land on shares, defendant to have exclusive possession and to pay plaintiff certain portions of the crop as rent, which created the relation of landlord and tenant.    70 Ark. 79.    Title to the crop was in the tenant.    54 Ark. 346; 30 Ark. 359.

When landlord and tenant are tenants in common. 54 Ark. 349; 32 Ark. 436.

When the relation between the owner and tenant constitutes master and servant.    54 Ark. 349; 25 Ark. 327; 32 Ark. 436; 34 Ark. 687.

Tenant may for injury to person or goods in wrongful eviction, recover damages.    64 Ark. 453.

Appellee was guilty of assault and battery.    2nd Am. & Eng. Ency. p. 953; 115 Ark. 461; 106 Ark. 4; and he should respond in damages.    2nd Am. & Eng. Ency. p. 992; 75 Ark. 232; 64 Ark. 613.

Landlord cannot take possession by force against the will of the tenant.    55 Ark. 360.    But he may take possession peaceably.    32 Vt. 82.

*Hendricks & Snodgrass,* for appellees.

Appellant was not a tenant.    79 Ark. 430; 34 Ark. 139; 34 Ark. 687; 32 Ark. 436; 48 Ark. 264; 54 Ark. 346; 70 Ark. 601; 16 Am. Rep. 780; 34 Ark. 179; 73 N. C. 320; 73 N. C. 384; 34 Ark. 687; 10 C. B. N. S. 227; 151 Pa. 351; 17 L. R. A. 213; 24 Atl. 1062.

In such case an action for damages will not lie for forcible eviction.    132 Ga. 323; 16 Ann. Cas. 723; 3 Moore & S. 790; 44 Ill. App. 19; 17 Times L. R. 362; 1 Irish Jur. 313; 6 Scott, L. R. 301.

He may eject the servant without process of law.    1 Irish Jur. N. S. 313; 1 Cal. 450; 6 Scott, L. R. 369, or without notice to quit.    4 El. & Bl. 347; 1 Jur. N. S. 303; 24 L. J. Q. B. N. S. 54.

An action for trespass will not lie against the master for breaking and entering premises.    10 C. B. N. S. 227; 7 Jur. N. S. 948; 30 L. J. C. P. N. S. 253; 3 Frost & F. 49; 151 Pa. 351; 17 L. R. A. 213; 24 Atl. 1062.

Servant is not entitled to time to remove his goods. 10 Barn & C. 721.

HART, J. (after stating the facts). The decision the court was right. According to the plaintiff's own testimony, J. F. Woodson was a share cropper on McLaughlin's farm. He was to cultivate and gather the crop for one-half of it, and McLaughlin allowed him to occupy a tenant house on the farm in order to cultivate and gather the crop. This constituted the relation of landlord and laborer, and not that of landlord and tenant. *Bourland* v. *McKnight*, 79 Ark. 427.

It appears from Woodson's own testimony that the title to the crop was to remain in McLaughlin until the latter divided it and gave the former his share. This is exemplified by that portion of Woodson's testimony where he speaks of picking some of the cotton and turning it over to McLaughlin. McLaughlin, after taking out certain supplies which he had furnished Woodson, would then turn over Woodson's share of the crop to him. It appears that the occupation of the house by Woodson was merely ancillary to his employment. His occupation was merely in the character of share cropper, and he had no interest whatever in the premises. Woodson's possession of the house was that of McLaughlin, and was a part of the contract price for the services performed by him. When his contract was

terminated by McLaughlin discharging him, his rights in the premises were extinguished, and it was his duty to get out.

The general rule is that a person who occupies the premises of his employer as a part of his compensation is in possession as a servant and not as a tenant. On the termination of his employment, his right to occupy the premises ceases.

The complaint does not allege a violation of the contract of hiring on the part of McLaughlin, but it alleges a trespass. Hence in this case it does not make any difference whether the discharge of Woodson by McLaughlin was lawful or not. It is sufficient that McLaughlin discharged him. *Bowman* v. *Bradley,* (Penn.) 17 L. R. A. 213, and *Lane* v. *Au Sable Electric Co.,* 147 N. W. (Mich.) 546 Ann. Cas. 1916-C, p. 1108, and case note.

If Woodson was wrongfully discharged, his remedy was to sue McLaughlin for a breach of contract. Where one, having contracted with another to allow him to cultivate his farm on the shares for a year, orders him off the farm before the end of the year, and refuses to let him gather the crop, the cropper may maintain an action at once against the land owner and recover as damages the value of such cropping contract. *Jewett* v. *Brooks,* 134 Mass. 505, and *Tignor* v. *Toney,* (Tex.) 35 S. W. 881. In such cases the damages, like the contract of hiring, are entire and accrue on the day when the contract is repudiated. They are measured by the value of the contract on which the cropper is deprived, and not by any injury done his person, or that of his wife.

It follows that the judgment must be affirmed.