# Richmond

## Rosel Clark, et als. v. Sid Harry.

March 13, 1944.

Record No. 2758.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Sherman Ballard* and *W. B. Snidow*, for the plaintiffs in error.

*J. L. Dillow*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

On October 8, 1936, Minnie Clark, Bertha Clark and Rosel Clark, the plaintiffs in error, who owned a 250-acre farm in Giles county, Virginia, entered into the following written contract with respect thereto with Sid Harry, the defendant in error:

"This Agreement, made and entered into this 8th day of October, 1936, by and between Minnie, Bertha and Rosel Clark, of Peterstown, West Virginia, parties of the first part, and Sidney Harry, of Staffordsville, Virginia, party of the second part;

"WITNESSETH: Parties of the first part agree to furnish to party of the second part house and garden, pig lot, barn, pasture for two cows, two horses and necessary firewood.

"Parties of the first part agree to furnish all seeds, plants and fertilizer for crops.

"Party of the second part agrees to do all work, furnish teams, machinery and tools for the farm work and assist in selling and marketing produce raised, party of the second part to put in a general vegetable, berry and grain crop, such as tomatoes, cucumbers, sweet and irish potatoes, strawberries, cane, corn, wheat and oats.

"All proceeds from crops to be divided equally between the parties of the first and second part, party of the second part agrees to work for party of the first part when needed at 10¢ per hour.

"This Agreement to run for one year and to be renewed at the end of the year if mutually satisfactory.

"Witness our hands and seals this 8th day of October, 1936.

"MINNIE, BERTHA &  
ROSEL CLARK          (SEAL)

"SID HARRY          (SEAL)"

Shortly after the execution of the agreement, Harry moved upon the Clark lands and carried on farming operations, pursuant to the terms of the contract, until the fall of 1942. In the latter part of November of that year, and after Harry had sowed seven acres of wheat, the Clarks orally notified him that they did not wish to renew the contract for another year and that they desired that he vacate the farm. On January 23, 1943, the Clarks notified Harry, in writing, to vacate the property on the following February 28. Harry refused to do so and the Clarks instituted in the trial justice court of Giles county an action of unlawful detainer against him. This action resulted in a judgment for the defendant and the Clarks appealed to the Circuit Court of Giles county. There the case was heard by the court, without a jury, upon the written agreement to which we have referred and a stipulation of facts, the essentials of which have been set out. The lower court likewise found for the defendant, and from that judgment the Clarks have sought and obtained this writ of error.

The Clarks contend that the effect of the contract was to create between them and Harry the relationship of master and servant, or employer and employee, which, they say, they had the right to terminate at any time.

Harry contends that the contract created the relationship of landlord and tenant between the Clarks and himself; that when he held the premises from year to year he became their yearly tenant; and that this tenancy could be terminated by the Clarks only upon their giving him three months' written notice required by Code, section 5516. Apparently this was the view adopted by the trial court.

■ ■ Contracts of this character are quite common throughout the United States, and there are innumerable cases dealing with them.* It is, of course, well settled that there may be a lease of land so as to create the relation of landlord and tenant, although the rent is to be paid in a share of the crops raised. It is equally well settled that a person may be employed to cultivate land, receiving as his compensation a share of the crops, without the relationship of landlord and tenant being created between the parties. Such an employee is termed a "cropper." 15 Am. Jur., Crops, sec. 49, p. 239; Annotation: 98 Am. St. Rep. 953.

■ In *Smith* v. *Payne*, 153 Va. 746, 757, 758, 151 S. E. 295, 299, we approved this definition of a lease found in 18 Am. & Eng. Ency. of Law, 2d Ed., 597: "A lease is a contract for the possession and profits of lands and tenements on the one side, and the recompense of rent or property on the other; or, in other words, a conveyance to a person for life, years, or at will, in consideration of a return of rent or other recompense." A lease is, as we there pointed out, "an estate for life, for years, or for some lesser term." One who occupies or is in possession of the premises of another under a lease is a tenant.

■ On the other hand, a cropper is a person employed by the landowner to cultivate the land and to raise a crop thereon. He receives for his labor a share of the crop which he produces and harvests, or the proceeds thereof, but he has no estate in the land and his possession thereof is that of the landowner. He is as much a servant or employee as if his wages were fixed and payable in money, and his possession of the crop is only that of a servant, which in the law is that of a landowner. 15 Am. Jur., Crops, sec. 45, pp. 236, 237; Annotation: 98 Am. St. Rep. 953-956.

Mr. Graves, in his Notes on Real Property, 1912 Ed., sec. 50, p. 59, cites with approval this language from Mr. Freeman's note in 37 Am. Dec. 317, 320: "A 'cropper' is thus

---

*See 15 Am. Jur., Crops, section 45 *ff*; Annotations: 37 Am. Dec. 317; 98 Am. St. Rep. 953; 4 L. R. A. (N. S.) 698. For recent cases see, 10 Words and Phrases, Perm. Ed., "Cropper," p. 552 *ff*.

defined in *Fry v. Jones*, 2 Rawle (Pa.) 11: 'If one hires a man to work his farm, and gives him a share of the produce, he is a cropper. He has no interest in the land, and receives his share as the price of his labor.' That is to say, if the general possession of the land remains in the owner, and the occupant cultivates it for a share of the produce as compensation, he is a cropper. The question, then, in every case of cultivation of land on shares is, Does the contract give the owner his share as rent, or the occupant his share as compensation? If the former, * * * the occupant is a tenant; if the latter, he is a cropper." See also, 98 Am. St. Rep. 953, 954.

While these legal principles are clear enough, frequently they are not distinctly preserved in the particular contract, especially where, as here, it is prepared by the parties without the aid of counsel. Consequently, it is often difficult to determine whether a person who works the lands of another on shares is a tenant or a mere cropper. The determination of the question turns upon the actual intention of the parties as gathered from the particular contract construed as a whole.

Viewed in the light of the principles which we have stated, we are of opinion that it was the intention of the parties to the contract before us to establish the relation of master and servant or owner and cropper, and not that of landlord and tenant.

In the first place, the contract does not purport on its face to be a lease. There are no words of demise or letting of the premises. While of course, this is not determinative, it is an important circumstance to be considered in arriving at the intention of the parties. *Taylor* v. *Bradley*, 39 N. Y. 129, 100 Am. Dec. 415, 422.

Next, there is nothing in the agreement to indicate that the owners intended to part with, or that Harry was to be entitled to the exclusive possession of, the land or any interest therein. Indeed, the "land" is not mentioned at all. The owners "agree to furnish" to Harry a "house and garden, pig lot, barn, pasture for two cows". Had there

been a lease of the whole farm, as Harry contends, he would have been entitled to the use of these and there would have been no occasion for the provision that the owners were to "furnish" them to him. The fact that these facilities on the farm were to be furnished by the landowners to Harry, along with the "two horses," "necessary firewood," and "all seeds, plants and fertilizer for crops," would indicate that this was in return for the services to be performed by him.

The contract further stipulates what services Harry is to perform in return for the things furnished to him by the landowners. He agreed to "do all work" incident to planting, cultivating and harvesting the crops, to "furnish teams, machinery and tools for the farm work," and was further to "assist in selling and marketing produce raised." The fact that the landowners would need Harry's assistance in "selling and marketing" the crops raised, and that "all proceeds" therefrom were to be divided equally between the parties, indicates that the crops, as such, were not the property of Harry but belonged either to the landowners or to the landowners and Harry jointly. See *Lowe* v. *Miller*, 3 Gratt. (44 Va.) 205, 46 Am. Dec. 188. There is no indication that Harry is to divide the crops and is to pay the landowners a share, or the proceeds of a share, as rent. On the contrary, the indication is that the crops are to be sold and marketed by the landowners with Harry's assistance, that they, and not he, are to divide the proceeds, and that he is to receive his share as part remuneration for the services performed by him to the landowners.

All of these matters, we think, negative the existence of an intention to create the relation of landlord and tenant between the parties, and indicate it was to be that of owner and cropper, or employer and employee. It necessarily follows, then, that Harry, the defendant in error, was not entitled to the notice specified in Code, section 5516, for terminating a yearly tenancy, before being required to vacate the premises.

Whether the contract of employment was renewed for another year, beginning October 8, 1942, and whether Harry, the employee, was wrongfully discharged, are questions which were not raised in the court below and have not been presented to us. Indeed, they are not pertinent to the present inquiry which involves merely the Clarks' right to the possession of the premises. Since Harry's possession was that of his employers, and his occupancy of the premises was merely incidental to his employment, the termination of the relationship terminated his right to such occupancy. See *Heffelfinger* v. *Fulton*, 25 Ind. App. 33, 56 N. E. 688; *McKibben* v. *Rosselot*, 4 Ohio App. 331; *Mackenzie* v. *Minis*, 132 Ga. 323, 63 S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723; *Marshall* v. *Matthews*, 149 Ga. 370, 100 S. E. 103; *Bowman* v. *Bradley*, 151 Pa. 351, 24 A. 1062, 17 L. R. A. 213; *Woodson* v. *McLaughlin*, 150 Ark. 340, 234 S. W. 185; 63 C. J., Trespass, sec. 15, p. 899. Even though the contract of employment be wrongfully terminated by the employer, it is the employee's duty to surrender possession of the premises and pursue his remedy for wrongful discharge against the employer. *Mackenzie* v. *Minis, supra; McKibben* v. *Rosselot, supra; Crain* v. *Burnett*, 190 Ill. App. 407.

The judgment complained of will be reversed and a final judgment will be here entered in favor of the plaintiffs in error against the defendant in error for the possession of the premises in question.

*Reversed and final judgment.*