## Richmond

MILTON T. HICKMAN, EXECUTOR OF THE ESTATE OF GEORGE HAY-
WARD CARRUTHERS, DECEASED, AND CHARLES H. CARRUTHERS V.
ELIZABETH S. MELSON AND CLAUDE MEARS.

March 16, 1959.

Record No. 4890.

Present, All the Justices.

The opinion states the case.

*William King Mapp* (*J. Brooks Mapp; Mapp & Mapp*, on brief),
for the appellants.

*B. Drummond Ayres*, for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

Milton T. Hickman, executor of the estate of George Hayward
Carruthers, deceased, and Charles H. Carruthers, hereinafter re-

ferred to as the plaintiffs, filed their bill in the court below against Elizabeth S. Melson and Claude Mears, hereinafter referred to as the defendants, alleging that Charles H. Carruthers, as devisee of George Hayward Carruthers, deceased, is the "tenant" of certain oyster grounds in the waters of Accomack county, formerly owned by Thorogood Melson and now owned by his widow, Elizabeth S. Melson, and praying that the defendants, Elizabeth S. Melson, and her agent, Claude Mears, be enjoined from trespassing on the property and interfering with the plaintiffs' "tenancy."

The defendants filed their answer and cross bill denying that the relationship of landlord and tenant had been created or had existed between the parties, and alleging that the agreement between the Melsons and George Hayward Carruthers was purely an agreement for his services which was terminated by his death. The answer and cross bill further alleged that if the agreement relied on by the plaintiffs be construed to be a "tenancy," it was nevertheless void for uncertainty and indefiniteness and "was terminable at the will of either party." The answer prayed that the plaintiff, Charles H. Carruthers, be enjoined from trespassing upon the oyster grounds.

After hearing the evidence ore tenus the trial court entered a decree holding that the plaintiffs had not sustained the burden of establishing the "tenancy contract alleged" and consequently were not entitled to the relief prayed for. In accordance with the prayer of the cross bill, the plaintiff, Charles H. Carruthers, was enjoined and restrained from trespassing upon the oyster grounds. From this decree the plaintiffs have appealed, claiming in substance that the finding and holding of the trial court are contrary to the law and the evidence.

The facts may be stated thus. For a number of years prior to his death Thorogood Melson and his wife, Elizabeth S. Melson, had a joint life estate in the oyster grounds here involved. About fifteen years prior to the commencement of this suit, Melson entered into an oral agreement with George Hayward Carruthers which is the subject of this controversy. Melson died on February 15, 1954, Carruthers died on April 6, 1957, and hence at the time of the trial both of the parties to the original contract were deceased. The only proof of the terms of the agreement is in the statements which the two parties made during their lives. These statements were admitted in evidence without objection.

Charles H. Carruthers, who with his brother, George, had been

in the business of gathering oysters from other grounds, when asked to state the substance of the agreement or understanding between George and Melson, replied that George had told him that "it was understood that we would take charge of it, furnish the boats, scows, and everything, just as if it was ours, and get the oysters up, and sold to the best advantage to a shucking house, or wherever to the best advantage to get the most money. That we would look after it, watch it, and take care of it, and go fifty-fifty. Divide the profits, after all expenses were paid. We would furnish the boats, scows, shovels, forks, tongs, and so forth." "In addition to that," he said, he and his brother "guarded" the Melson oyster grounds.

Mrs. Melson, when asked "what arrangement" had been made between her husband and George Hayward Carruthers, replied: "I didn't hear the arrangement. My husband told me he made all the arrangements with Mr. Hayward Carruthers, and he was to work it for half—furnish the boats and things, and give us half the proceeds."

Mears, the brother of Mrs. Melson, when asked if he knew "what the arrangement was" between Melson and Carruthers, replied that Melson had told him that "Hayward was to take and work the flats, and was to get half of the proceeds for his services."

The record does not show just when this agreement was entered into and when the operations thereunder were commenced. However, it does show that George Hayward Carruthers, with the assistance of his brother, Charles, looked after the oyster grounds, gathered and sold such oysters as they saw fit, and employed and paid the necessary labor. After the oysters had been sold and the expenses deducted, one-half of the net proceeds were paid to Melson during his life and after his death to his wife.

The plaintiffs introduced in evidence a notebook which shows that settlements between the parties were made on November 18 and December 18, 1948, November 15 and December 18, 1950, and January 12, 1951. In each of these entries Melson receipted for the cash paid him. One of these entries, made on November 18, 1948, shows the payment of the sum of $50, opposite which is printed the word "rent." Similarly, in a settlement recorded in the notebook on February 24, 1951, there is written the words "Paid rent. Pd." Mrs. Melson denied that either of these entries was in the handwriting of her husband, and there is no proof to the contrary.

Shortly after Melson's death, in February, 1954, George Hayward Carruthers went to see Mrs. Melson for the purpose of finding out

what disposition she intended to make of the oyster grounds. She told him "to continue on as he was until further notice." The record contains receipts signed by Mrs. Melson for cash payments to her "for oysters" on April 8 and 16, 1957.

There is evidence that Carruthers planted 800 bushels of oyster shells on the oyster grounds in 1954. The record further shows that on June 11, 1954, and again on June 8, 1956, H. M. Terry planted some shells on the oyster grounds pursuant to agreements signed by Mrs. Melson, George Hayward Carruthers, and Terry. However, neither of these agreements throws any light on the nature of the underlying agreement between Mrs. Melson and Carruthers, other than the recital that "they share in the proceeds from the oysters taken from these flats."

After the death of George Hayward Carruthers, in April, 1957, his brother, Charles, continued to market oysters from the flats until the end of the 1957 season, in May of that year. Shortly after his brother's death, Charles visited Mrs. Melson and offered to sell her his interest in the oyster grounds. She refused to buy, advising him that he had no interest to sell. When Mrs. Melson signified her intention of having her brother, Mears, look after her interest in the oyster grounds the present suit was instituted.

The evidence is amply sufficient to sustain the trial court's finding that the plaintiffs have not sustained the burden of establishing the tenancy contract relied on. As has been said, at the time of the trial both parties to the oral agreement were dead, and the only evidence as to its provisions is found in the statements made by them. At most, the evidence as to these statements is conflicting, and having been heard ore tenus this conflict has been resolved in favor of the defendants.

According to the testimony of Mears, Melson told him that George Hayward Carruthers "was to take and work the flats, and was to get half of the proceeds for his services." This is corroborated by the testimony of Mrs. Melson. Clearly, this shows merely an agreement for services and not the relationship of landlord and tenant. *Clark* v. *Harry*, 182 Va. 410, 29 S. E. 2d 231.

It will be observed that in Charles H. Carruthers' testimony as to the "understanding," there is no claim that the property was "leased" for a term, or that George Hayward Carruthers was to pay "rent" for the occupancy. What George Hayward Carruthers did pursuant to the agreement is entirely consistent with a contract for-

services. He visited the property at intervals to protect it from poachers, furnished the equipment, gathered and marketed the oysters, and divided the net proceeds of such operations with the property owners. There is nothing in this undertaking to show that as against the owners he was entitled to exclusive possession of the property which is characteristic of the occupancy of a tenant. *Clark v. Harry, supra,* 182 Va., at page 415, 29 S. E. 2d, at pages 233, 234. Charles H. Carruthers testified that Melson had visited the property on only one occasion and had left the operation entirely to him and his brother. But there is no evidence that the Melsons had no right to go there at any time they chose, or could do so only with George Hayward Carruthers' consent.

Having reached the conclusion that the relationship between the Melsons and George Hayward Carruthers was not that of landlord and tenant but merely a contract of employment, it follows that such relationship was terminated upon the death of Carruthers, and no interest in the property passed under his will. Under this view of the case there is no occasion to discuss the other questions raised in the briefs.

The decree is

*Affirmed.*